# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL JOHNSON,** | : | **CIVIL NO. 1:09-CV- 2257** |
| | : | |
| **Petitioner,** | : | **(Judge Conner)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **DAVID A. VARANO, et al.,** | : | |
| | : | |
| **Respondents,** | : | |

## REPORT AND RECOMMENDATION

### I.    Introduction

The petitioner in this case, Michael Johnson, is a state inmate, a criminal recidivist, a fugitive, and a man who has violated his state parole on four separate occasions during the past thirteen years. Even though Johnson never timely challenged any of these parole decisions either before the parole board or in state court, as he is entitled to do, Johnson now insists that these state parole decisions spanning the past decade violate his right to due process and constitute cruel and unusual punishment.

Specifically, Johnson contends that the parole board's decision to extend his parole release date beyond the original maximum term of his sentence violates his constitutional rights. That parole board action, which Johnson attacks in this petition, is specifically authorized by state law, which expressly provides that parolees who

1

violate the terms of their parole forfeit credit for the time served on parole as a penalty for their wrongdoing.

For the reasons set forth below, it is recommended that Johnson's petition be denied, since it appears that this state inmate has failed to exhaust his state remedies and is not entitled to use a writ of habeas corpus to compel state parole officials to deviate from the parole outcome mandated by state law, and by his own repeated misconduct.

## II.    Statement of Facts and of the Case

The tangled history of criminal conduct, parole violations, arrests, and imprisonment which has marked the past quarter century of Michael Johnson's life began in 1981. On November 30, 1981, Michael Johnson was sentenced to a 15 to 30 year period of incarceration after being convicted of robbery, aggravated assault, and possession of instruments of crime in the Court of Common Pleas of Philadelphia County. (Doc.8,  Ex. 1.)  As initially calculated by the Pennsylvania Department of Corrections, Johnson's minimum sentence on the November 30, 1981 convictions was November 4, 1994, and his controlling maximum sentence was November 4, 2009. (Doc. 8, Ex.1.)

Johnson received his first opportunity to demonstrate his suitability for release on parole on November 4, 1994, when he was paroled from state custody. (Doc. 8, Ex.

2.) Johnson promptly squandered this opportunity on February 14, 1996, when he was arrested on new criminal charges. (Doc. 8, Ex. 3.) On February 15, 1996, the Pennsylvania Board of Probation and Parole issued a Warrant to Commit and Detain Petitioner, based on these new criminal charges. (Doc. 8, Ex. 4.)

While these criminal charges were dismissed, (Doc. 8, Ex. 5), on November 19, 1996, Johnson was recommitted to state custody by the parole board based upon technical parole violations. (Doc. 8, Ex. 6.) Johnson remained in custody on this parole violation until July 30, 1997, when he was released on parole for the second time by the parole board. (Doc. 8, Ex. 7.)[1]

Johnson remained in compliance with the terms of this, his second term of parole, for less than 60 days before he absconded and became a fugitive. On September 22, 1997, Johnson left his approved residence at Liberty Management Community Correction Center and never returned. (Doc. 8, Ex. 8.) Johnson then failed to report to the parole office for a scheduled meeting on September 25, 1997. (Id.) As a result of Johnson's disappearance and flight, on October 1, 1997, the petitioner was declared delinquent, effective September 23, 1997. (Doc. 8, Ex. 9.)

---

[1]Johnson was detained a total of 531 days by the Board on this first parole violation, remaining in custody from February 15, 1996 until July 30, 1997.

Johnson remained a fugitive from justice for nine months until he was arrested on new criminal charges on June 22, 1998. (Doc. 8, Ex. 10.) The following day, on June 23, 1998, the Pennsylvania Board of Probation and Parole issued a Warrant to Commit and Detain Petitioner against Johnson, based on the new criminal charges. (Doc. 8, Ex. 11.) On September 22, 1998, the parole board ordered Johnson recommitted to custody as a technical parole violator and detained pending disposition of the new criminal charges. (Doc. 8, Ex. 12.) While the new criminal charges lodged against Johnson as a result of the June 22,1998 arrest were dismissed, (Doc. 8, Ex. 13) on March 17, 1999, the parole board entered a decision which revised Johnson's maximum release date, extending the petitioner's parole violation maximum date to August 4, 2010. (Doc. 8, Ex. 14.) This revised August 4, 2010 parole violation maximum date was calculated by the parole board by adding the 273 days that Johnson was a fugitive and was delinquent on parole, from September 23, 1997 through June 23, 1998, to Johnson's original November 4, 2009 maximum sentence date.

In taking this action extending Johnson's release date, the parole board was expressly guided by the provisions of state law, 61 Pa.C.S. § 6138(c)(2), which states that:

**c) Technical violators.--**

(1) A parolee under the jurisdiction of the board who is released from a correctional facility and who, during the period of parole, violates the terms and conditions of his parole, other than by the commission of a new crime of which the parolee is convicted or found guilty by a judge or jury or to which the parolee pleads guilty or nolo contendere in a court of record, may be recommitted after a hearing before the board.

(2) If the parolee is so recommitted, the parolee shall be given credit for the time served on parole in good standing but with no credit for delinquent time and may be reentered to serve the remainder of the original sentence or sentences

61 Pa.C.S. § 6138©.

Although Johnson was advised him of his appeal rights at the time of this decision extending his maximum release date, he did not seek administrative review with the Parole Board. See 37 Pa.C.S. § 73.1. Nor did Johnson seek review of this decision in the Commonwealth Court of Pennsylvania, See 42 Pa.C.S. § 763(a).On October 29, 2000, Johnson was released on parole for the third time, having completed his second parole violation sentence. Johnson's release was now subject to his revised parole violation maximum date, August 4, 2010. (Doc. 8, Ex.15.)[2]

---

[2]As a result of these parole board actions, by October, 2000, a balance of 3566 days remained on Johnson's parole violation maximum sentence, and Johnson had been detained on his latest parole violation for a total of 859 days, from June 23, 1998 until October 29, 2000.

Less than eight months after his third release on parole, Johnson once again violated the terms of his parole supervision when he was arrested on June 19, 2001 on new criminal charges. (Doc. 8, Ex.16.) That same day, June 19, 2001, the Pennsylvania Board of Probation and Parole issued a Warrant to Commit and Detain Petitioner against Johnson, based on this latest episode of newly reported criminal conduct. (Doc. 8, Ex. 17.) Based upon this parole detainer, Johnson was remanded to custody at a state correctional institution on July 12, 2001. (Doc. 8, Ex. 18.) These criminal charges were later dismissed, (Doc. 8, Ex. 19), and on February 7, 2002, Johnson was released from custody by the Board after having been detained a total of 233 days by the Board, from June 19, 2001 until February 7, 2002. (Doc. 8, Ex. 18.)

Having been released on parole for the fourth time in February 2002, by July 2003, Johnson was once again in violation of the conditions of his parole when he failed to report for a scheduled appointment with his parole agent on July 9, 2003. (Doc. 8, Ex. 20.) Confronted with yet another failure to abide by the conditions of Johnson's parole, the parole board was compelled on July 15, 2003, to declare Johnson delinquent and a fugitive, effective July 9, 2003. (Doc. 8, Ex. 21.) Johnson remained at large as a fugitive until he was arrested on December 18, 2006. (Doc. 8, Ex. 22.)

Johnson's latest arrest set in motion a series of events. First, on December 19, 2006, the Pennsylvania Board of Probation and Parole issued a Warrant to Commit

and Detain Johnson. (Doc. 8, Ex. 23.) In addition, on December 19, 2006, Petitioner was rearrested in a state case, Commonwealth of Pennsylvania v. Michael K. Johnson, No. CP-23-CR-0006938-2005 (Delaware County). (Doc. 8, Ex. 24.) On March 8, 2007, Johnson was recommitted as a technical parole violator by the parole board and his parole violation maximum date was once again revised consistent with state law, to a newly extended date, January 13, 2014. (Doc. 8, Ex. 25.) Although the decision that revoked Johnson's parole and extended his parole violation maximum date expressly advised him of his appeal rights, Johnson did not seek administrative review with the Parole Board. See 37 Pa.C.S. § 73.1. Neither did he seek review of this decision in the Commonwealth Court of Pennsylvania. See 42 Pa.C.S. § 763(a).

On October 2, 2008, Johnson pleaded guilty to new criminal charges in Commonwealth of Pennsylvania v. Michael K. Johnson, No. CP-23-CR-0006938-2005 (Delaware County) and was sentenced to 36 to 72 months incarceration. (Doc. 8, Ex. 24.) This latest criminal conviction compelled further action by the parole board in the form of a February 26, 2009 order directing that Johnson was recommitted as a convicted parole violator because of the conviction in Commonwealth of Pennsylvania v. Michael K. Johnson, No. CP-23-CR-0006938-2005 (Delaware County) and extending his parole violation maximum date to April 25, 2019. (Doc. 8, Ex. 26.) Although the decision that revoked Johnson's parole and extended his parole

violation maximum date advised him of his appeal rights, Johnson failed to seek administrative review with the Parole Board in a timely manner. Instead, eight months after the entry of this order, on November 6, 2009, Johnson mailed a document styled as a "Petition for Administrative Review and or Relief" to the Chairman of the Pennsylvania Board of Probation and Parole. (Doc. 8, Ex. 27.) On December 14, 2009, the "Petition for Administrative Review and or Relief" was dismissed by the board as untimely. (Doc. 8, Ex. 28.)

Johnson made no effort to pursue further parole consideration in the state courts. Instead, on November 17, 2009, Johnson filed this petition for writ of habeas corpus, in which he challenged the parole board's application of state law in a fashion which resulted in the extension of his parole releaser date beyond the initial term he would have served if he had complied with his parole supervision.

This matter has been fully briefed by the parties, and it now ripe for disposition. because Johnson has not adequately exhausted his state remedies, and because his petition lacks merit, it is recommended that the petition be denied.

III. **Discussion**

## A. State Prisoner Habeas Relief–The Legal Standard.

A state prisoner seeking to invoke the power of this Court to issue a writ of habeas corpus must satisfy the standards prescribed by Title 28, United States Code, Section 2254, which provides in part as follows:

> **(a)** The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

> **(b)(1)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

>> **(A)** the applicant has exhausted the remedies available in the courts of the State;

>> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

> **(2)** An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

28 U.S.C. § 2254 (a) and (b).

## (1). Substantive Standards Governing Section 2254 Petitions.

As this statutory text implies, state prisoners must meet exacting substantive and procedural benchmarks in order to obtain habeas corpus relief. At the outset, federal

courts may "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). By limiting habeas relief to state conduct which violates "the Constitution or laws or treaties of the United States", Section 2254 places a high threshold on the courts. Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings resulted in a "fundamental defect which inherently results in a complete miscarriage of justice" or was completely inconsistent with rudimentary demands of fair procedure. See e.g., Reed v. Farley, 512 U.S. 339, 354 (1994). Thus, claimed violations of state law, standing alone, will not entitle a petitioner to Section 2254 relief, absent a showing that those violations are so great as to be of a constitutional dimension. See, Priester v. Vaughan, 382 F.3d 394, 401-02 (3d Cir. 2004)

## (2). Procedural Thresholds for Section 2254 Petitions.

Furthermore, state prisoners seeking relief under Section 2254 must also satisfy specific, and precise, procedural standards. Among these procedural prerequisites is a requirement that the petitioner " has exhausted the remedies available in the courts of the State" before seeking relief in federal court. 28 U.S.C. § 2254(b)(2). In instances where a state prisoner has failed to exhaust the legal remedies available to

him in the state courts, federal courts typically will refuse to entertain a petition for habeas corpus. See, Whitney v. Horn, 280 F.3d. 240, 250 (3d Cir. 2002). A petitioner who has failed to properly pursue a claim in state court in accordance with state legal procedures can overcome this procedural bar to habeas relief only by showing either: (1) both a valid cause for the procedural default and actual prejudice as a result of some violation of federal law; see, Johnson v. Pinchak, 392 F.3d 551, 563 (3d Cir. 2004), or (2) that the failure to review the petitioner's claim will inevitably "result in a fundamental miscarriage of justice". Coleman v. Thompson, 501 U.S. 722, 750 (1991).

This statutory exhaustion requirement is rooted in principles of comity and reflects the fundamental idea that the state should be given the initial opportunity to pass upon and correct alleged violations of the petitioner's constitutional rights. O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999). As the Supreme Court has aptly observed: "a rigorously enforced total exhaustion rule" is necessary in our dual system of government to prevent a federal district court from upsetting a state court decision without first providing the state courts the opportunity to correct a constitutional violation. Rose v. Lundy, 455 U.S. 509, 518 (1982). Requiring exhaustion of claims in state court also promotes the important goal of ensuring that a complete factual record is created to aid the federal courts in their review of a § 2254 petition. Walker

v. Vaughn, 53 F.3d 609, 614 (3d Cir. 1995). A petitioner seeking to invoke the writ of habeas corpus, therefore, bears the burden of showing that all of the claims alleged have been "fairly presented" to the state courts, and the claims brought in federal court must be the "substantial equivalent" of those presented to the state courts. Evans v. Court of Common Pleas, Del. Cty., Pa., 959 F.2d 1227, 1231 (3d Cir. 1992); Santana v. Fenton, 685 F.2d 71, 73-74 (3d Cir. 1982). A petitioner cannot avoid this responsibility merely by suggesting that he is unlikely to succeed in seeking state relief, since it is well-settled that a claim of "likely futility on the merits does not excuse failure to exhaust a claim in state court." Parker v.Kelchner, 429 F.3d 58, 63 (3d Cir. 2005).

### B. Johnson's Petition Should Be Denied Because Johnson Has Failed to Exhaust His State Remedies and Because Johnson Is Not Entitled to Use a Writ of Habeas Corpus to Compel Favorable Parole Consideration.

#### (1) The Exhaustion Doctrine Bars Consideration of This Habeas Petition.

In this case the Parole Board asserts that there are both procedural and substantive obstacles to habeas corpus relief for Johnson. At the outset, the Parole Board argues that to the extent that Johnson seeks to challenge the Board's revocation and re-sentencing decisions between 1994 and 2009, he had the option of both seeking an administrative review within the parole board and appealing to the Commonwealth

Court of Pennsylvania. Citing the availability of state administrative and appellate remedies, the Parole Board argues that, by failing to pursue state relief, Johnson has also failed to meet § 2254's exhaustion requirement.

It is now well-settled that exhaustion of available state remedies is an absolute prerequisite to filing a federal habeas petition. 28 U.S.C. § 2254(b)(1). As the United States Court of Appeals for the Third Circuit has held "[i]t is axiomatic that a federal habeas court may not grant a petition for writ of habeas corpus . . . unless the petitioner has first exhausted the remedies available in the state courts." Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997), cert. denied 532 U.S. 919 (2001). As the person seeking to invoke habeas relief, Johnson bears the burden of establishing that he has exhausted state remedies, Toulson v. Beyer, 987 F.2d 984, 987 (3d Cir. 1993) Johnson cannot satisfy this burden  and will not be deemed to have exhausted his state remedies as long as he had the right under state law to raise the question presented in his habeas petition. 28 U.S.C. § 2254( c );  Cristin v. Brennan, 281 F.3d 404, 410 (3d Cir. 2002).

In this case Johnson is a criminal recidivist and parole violator who was recommitted as a parole violator four times. As a result of these misdeeds Johnson's parole violation maximum sentence was extended three times. (Doc. 8, Exs.  6, 12, 14, 25, 26.) Throughout this fifteen year history of state parole action, Johnson could have

challenged any of these decisions, both through the Board's administrative review process, see 37 Pa. C. S. § 73.1, and by filing by a timely appeal to Commonwealth Court. See Bronson v. Pennsylvania Board of Probation and Parole, 491 Pa. 549, 421 A.2d 1021 (1980)(revocation), McMahon v. Pennsylvania Board of Probation and Parole, 504 Pa. 240, 470 A.2d 1337 (1983)(recalculation).

Aside from a single, untimely request for an administrative review of one of these actions, it is undisputed that Johnson never pursued any of his available state remedies to challenge the various state parole decisions rendered over the past decade. That failure to pursue available state remedies is now fatal to Johnson's petition. Since Johnson has failed to exhaust his state remedies, his petition should be denied. Indeed, such petitions have routinely been denied in the past where, as in this case, it has been shown that the petitioner who is challenging a parole decision has not exhausted his other remedies before proceeding to federal court. See, e.g., Warwick v. Miner, 257 F. App'x 475 (3d Cir. 2007); Williams v. Winder, 232 F. App'x 177 (3d Cir. 2007); Coady v. Vaughn, 251 F.3d 480 (3d. Cir. 2001).

Given Johnson's clear defaults, this court cannot review the merits of his procedurally defaulted claims unless Johnson shows either cause for the procedural default and actual prejudice, or that a fundamental miscarriage of justice will result if the court does not review the claims. See McCandless v. Vaughn, 172 F.3d 255, 260

(3d Cir. 1999); Caswell v. Ryan, 953 F.2d 853, 861-62 (3d Cir. 1992). To demonstrate "cause" for a procedural default, Johnson must point to some objective external factor which impeded his efforts to comply with the state's procedural rule. See Murray v. Carrier, 477 U.S. 478, 488 (1986). "Prejudice" will be satisfied only if Johnson can demonstrate that the outcome of the state proceeding was "unreliable or fundamentally unfair" as a result of a violation of federal law. See Lockhart v. Fretwell, 506 U.S. 364, 366 (1993) Here, Johnson's petition fails to excuse these defaults because Johnson has offered no good cause or excuse for his failure to follow the proper procedures to challenge the Board's revocation decisions and recalculation orders. Moreover, Johnson has not demonstrated the type of fundamental unfairness in the parole board's conduct which would permit a finding of prejudice .

Nor can Johnson avoid this procedural default by claiming that the failure to review the claim will result in a fundamental miscarriage of justice. Edwards v. Carpenter, 529 U.S. 446, 451 (2000). The miscarriage of justice exception applies only in extraordinary cases where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 496. Here Johnson's procedurally flawed petition does not claim that he is actually innocent. Rather, Johnson simply challenges the manner in which the Board calculated his parole violation maximum sentence after he was recommitted as a convicted parole violator.

Such a claim simply does not amount to the type of profound, compelling miscarriage of justice which would excuse a petitioner's procedural defaults. Therefore, Johnson's petition should be procedurally barred due to his failure to exhaust his state remedies.

### 2. Johnson's Petition Fails on Its Merits

Entirely aside from its procedural shortcomings, Johnson's petition fails on its merits. Section 2554 expressly authorizes this court to reach the merits of a petitioner's claims, notwithstanding his procedural defaults. See 28 U.S.C. § 2254(b)(2). In this case, when we consider the merits of Johnson's claims we find that this petition fails on its merits because Johnson has not identified state conduct in this case which violates "the Constitution or laws or treaties of the United States" and resulted in a fundamental defect which inherently results in a complete miscarriage of justice or was completely inconsistent with rudimentary demands of fair procedure. Fairly construed, Johnson's petition simply challenges the fashion in which the parole board revoked, recalculated and extended his term of incarceration following his repeated parole violations.

State inmates like Johnson frequently invite federal courts to revisit discretionary parole determinations by challenging those parole decisions on due process grounds. Yet these invitations are rarely embraced by the courts. Thus, for

example, federal courts have routinely rejected suggestions by state prisoners that discretionary parole denials offend constitutional due process, and have denied habeas relief to such petitioners. See, e.g., Williams v. Pa. Bd. of Probation and Parole, No. 07-3158, 2008 WL 5120773 (E.D. Pa. Oct. 31, 2008); Walls v. Attorney General, No. 06-1598, 2007 WL 4190790 (W.D. Pa. Nov. 26, 2007); Zuniga v. Pa. Bd. of Probation and Parole, No. 05-5517, 2007 WL 1002179 (E.D. Pa. March 29, 2007); Anderson v. Pa. Bd. of Probation and Parole, No. 05-00163, 2006 WL 1149233 (M.D. Pa. April 26, 2006); Bonsall v. Gillis, 372 F.Supp. 2d 805 (M.D. Pa. 2005); Bachman v. Jeffries, 488 F.Supp. 107 (M.D. Pa. 1980).

These cases are grounded upon several basic tenets of constitutional law. At the outset, these cases acknowledge that it is well-settled that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979); see also Rauso v. Vaughn, 79 F. Supp. 2d 550, 551 (E.D. Pa.2000)(the federal Constitution does not create an entitlement to parole). These cases all further recognize that the Pennsylvania parole statute does not create a liberty interest in the right to be paroled. Burkett v. Love, 89 F.3d 135, 139 (3d Cir.1996); Rodgers v. Parole Agent SCI-Frackville, Wech, 916 F. Supp 474, 476-77 (E.D. Pa. 1996); McCrery v. Mark, 823 F.Supp. 288, 294 (E.D. Pa. 1993).

In this case, Johnson's petition attacks another aspect of the parole process: the fact that, under certain circumstances, state law calls for the forfeiture of time spent on parole by criminal recidivists like the petitioner who violate their parole supervision. See 61 Pa. C.S. §§ 6138(a)(2) and (c)(2). Thus, at bottom, Johnson's petition launches a constitutional challenge to the entire structure of Pennsylvania's parole statute.

The difficulty with this claim is that it is well-established that Pennsylvania's parole statute is constitutional. See United State ex rel. Lawson v. Cavell, 425 F.2d 1350, 1352 (3d Cir. 1970)(rejecting Eighth Amendment and due process claims). Indeed, for the past twenty five years federal courts have expressly considered the provision of state law challenged by Johnson, which permits the recalculation and extension of parole release dates for recidivists who violate their release, and have held that "[n]o [federal] constitutional question is involved in the Parole Board's failure to give relator credit for time on parole and its adjustment of the expiration date of his new maximum." See United States ex rel. Heacock v. Myers, 367 F.2d 583 (3d Cir.1966) (expressing "complete accord" and affirming opinion of district court in United States ex rel. Heacock v. Myers, 251 F.Supp. 773, 774 (E.D.Pa.1966)). As this court observed more than twenty years ago when it disposed of a similar inmate complaint:

Petitioner contends that in taking away his "street time" the Board unlawfully extended his maximum sentence in violation of his rights under the Fifth and Fourteenth Amendments. [The Pennsylvania State parole statute], directing the Pennsylvania Board of Parole to give a recommitted, convicted parole violator no credit for time spent on liberty while on parole, has withstood numerous constitutional challenges in the federal courts. [This statute] has been held not to violate the due process and equal protection guarantees of the federal constitution, and not to violate the constitutional prohibitions against double jeopardy, bills of attainder, cruel and unusual punishment or ex post facto laws. See also, United States ex rel. Heacock v. Myers, 251 F.Supp. 773 (E.D.Pa.1966), aff'd per curiam, 367 F.2d 583 (3d Cir. 1966), cert. denied, 386 U.S. 925 (1967); United States ex rel. Brown v. Pennsylvania Board of Parole, 309 F.Supp. 886 (E.D.Pa.1970); Gomori v. Maroney, 196 F.Supp. 190 (W.D.Pa.1961), aff'd, 300 F.2d 755 (3d Cir. 1962). In view of the foregoing authorities, the Court finds petitioner's contention without merit.

Choice v. Pennsylvania Bd. of Parole ,448 F.Supp. 294, 298 (M.D.Pa. 1977)(footnotes and citations omitted).

These observations remain as pertinent and compelling today as they were in 1977, and continue to rebut any habeas challenge to the parole board's compliance with state law, which refuses to reward parole violators with credit for time spent on parole. Moreover, in this the parole board persuasively demonstrates that the calculation of this forfeited parole time was careful, accurate and wholly in accord with state law. (Doc. 8, pages 15-17.) Therefore we find no error in this parole expiration date recalculation.

In short, the extension of Johnson's parole date does not reflect some violation of a fundamental constitutional right owed to the petitioner. Rather, it represents a straightforward application of a constitutionally valid state law to the repeated misdeeds of a felon, and recidivist. In the Court's view, rather than reflecting arbitrary action, this Parole Board judgment appears to represent a careful, informed balancing of the interests of both the inmate and society. It was, therefore, the very essence of informed, discretionary decision-making which is the duty and responsibility of the Parole Board. Since nothing in this Parole Board decision offends the constitution or laws of the United States, this petition for writ of habeas corpus should be denied.

**IV**.    <u>**Recommendation**</u>

Accordingly, for the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus filed pursuant to 28, United States Code, § 2254,  IT IS RECOMMENDED that the Petition be DENIED, and that a certificate of appealability should not issue. The Petitioner is further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written

objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

Dated: December 31, 2009